# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DARNELL W. MOON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:15-cv-00876-MJR |
| | ) | |
| **CHARLES SAMUELS, JR.,** | ) | |
| **THOMAS R. KANE,** | ) | |
| **D. SCOTT DODRILL,** | ) | |
| **BRIAN K. DAVIS,** | ) | |
| **LESLIE SMITH,** | ) | |
| **AMBER NELSON,** | ) | |
| **PAUL M. LAIRD,** | ) | |
| **D. SCHIAVONE,** | ) | |
| **JOHN BAIR,** | ) | |
| **APRIL CRUITT,** | ) | |
| **WILLIAM FALLS,** | ) | |
| **T. CAPALDO,** | ) | |
| **STEPHEN COLT,** | ) | |
| **J. SIMMONS,** | ) | |
| **WENDY J. ROAL,** | ) | |
| **J.S. WALTON,** | ) | |
| **R. ROLOFF,** | ) | |
| **HENRY RIVAS,** | ) | |
| **M. NEUMANN,** | ) | |
| **STEVEN CARDONA,** | ) | |
| **G. BURGESS,** | ) | |
| **DAN SPROUL,** | ) | |
| **CALVIN JOHNSON,** | ) | |
| **STEVE JULIAN,** | ) | |
| **JEFF BANEY,** | ) | |
| **JOHN PARENT,** | ) | |
| **LAWRENCE HOWARD, and** | ) | |
| **E. GARCIA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Darnell Moon currently resides in Cape Girardeau, Missouri, but was previously incarcerated at the United States Penitentiary at Marion, Illinois. (Doc. 1 at 8.) Proceeding *pro se*, Moon has filed a *Bivens* action pursuant to 42 U.S.C. § 1331, alleging that his due process, religious, and equal protection rights were violated when he was placed in Marion's Communications Management Unit in January 2012 and kept in the unit from January 2012 until December 2013. (*Id.* at 8-10.) Moon primarily seeks money damages. (*Id.* at 10-11.)

This matter is now before the Court for a preliminary review of Moon's complaint pursuant to 28 U.S.C. § 1915. Under § 1915, district courts must dismiss a case at any time if the case is frivolous or malicious, if the complaint fails to state a claim on which relief may be granted, or if the plaintiff seeks monetary relief against a defendant who is immune.

## **Background**

Moon was confined in the Communications Management Unit at the United States Penitentiary at Marion, Illinois from January 2012 to December 2013. (Doc. 1 at 8.) According to Moon, the unit is meant to house inmates who have "repeatedly filed and placed false liens and encumbrances against judges and law enforcement officers," prisoners who are "sex offenders who have repeatedly contacted their victims" about their crimes, inmates who have been "convicted of terrorism cases," or prisoners who have "repeatedly abused their communications," among others. (*Id*.) There are a number of differences between the unit and prisoners ensconced in the general population: written communications are subject to heightened scrutiny, in-person visits are limited to two per month, phone calls are restricted, and contact with inmates outside of the unit is severely curtailed, among other limitations. (*Id.* at 9.) Moon

says that officials transferred him to the unit and conducted reviews on his placement there every six months without providing him any due process safeguards. (*Id.* at 10-11.) He also alleges that prison staff kept him in the Communications Management Unit based on his Muslim faith, a religion that Moon converted to six months after his arrival at Marion. (*Id.* at 11.)

Sometime after December 2013, Moon was released from federal prison, and he says he is no longer in federal custody. (*Id.* at 8.) On August 5, 2015, he filed a complaint in this Court.

## Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Moon's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** All of the defendants violated Moon's due process rights, as Moon was not provided with due process prior to his placement in the Communications Management Unit at Marion and before his reviews renewing his placement in the Communications Management Unit.

**COUNT 2:** All of the defendants violated Moon's First Amendment and Equal Protection rights, as they kept Moon in the Communications Management Unit at Marion following periodic reviews due to his Muslim faith.

**COUNT 3:** All of the prison officials named in this case intentionally inflicted severe emotional distress on Moon under Illinois state law.

Moon's complaint focuses on a lack of due process protections prior to his placement in the Communications Management Unit and at subsequent reviews keeping him there, so the Court will start with that claim (**Count 1**). Moon should know that not every placement decision implicates the due process clause – process is typically required only when an inmate is moved to a new placement that imposes an "atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The key word is new: the "liberty interest recognized [by the Supreme Court] is derived from the drastic change in the conditions of confinement," *Lagerstrom v. Kingston*, 463 F.3d 621, 623 (7th Cir. 2006), so when there is no change in conditions, no process is due. *See*, *e.g.*, *Furrow v. Marberry*, 412 F. App'x 880, 882-83 (7th Cir. 2011) (no process due for prisoner who was already "housed under restrictive conditions" and who was transferred to slightly better conditions); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (potential for a liberty interest "in avoiding placement in *more restrictive* conditions"); *Lagerstrom*, 463 F.3d at 623 (degree of change necessary to trigger due process protections is absent if "the inmate was already confined to segregation"). While Moon may have been owed some process when he was initially placed in the Communications Management Unit in January 2012, that claim is barred by the two year statute of limitations governing *Bivens* claims arising in Illinois, as Moon did not bring this suit until August 2015. *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). As for the decisions keeping him in the Communications Management Unit, Moon has not alleged any change in conditions between his initial placement and the conditions in the unit at the time of his reviews, so no process is due. Accordingly, **Count 1** must be dismissed without prejudice.

Moon next alleges that various officials refused to transfer him back to the general population and out of the Communications Management Unit because he was Muslim (**Count 2**). The "religious dimension" of this alleged discrimination "is governed by the religion clauses of the First Amendment, leaving for the equal protection clause only a claim of arbitrariness unrelated to the character of the activity allegedly discriminated against." *See Reed v. Faulkner*, 842 F.2d 960, 962, 964 (7th Cir. 1988) (separate equal protection violation could exist if officials treat one religion "differently from" another in a deliberate fashion and "for no reason at all").

Construing his complaint liberally, Moon alleges that Rivas, Neumann, and Cardona all became hostile towards him after he converted to the Muslim faith six months into his time at Marion, and that these three and Burgess took efforts to deny his transfer out of the Communications Management Unit from that point forward due to his religious beliefs.  (Doc. 1 at 9-10.)  Moon also alleges that the decision-makers involved in the renewal decisions – namely Dodrill, Davis, Nelson, Laird, Smith, Schiavone, Bair, Cruitt, Falls, Capaldo, Colt, Simmons, Sproul, Johnson, Julian, Parent, Howard, and Garcia – denied all transfer requests due to his Muslim beliefs.  These allegations are sufficient to raise arguable First Amendment and Equal Protection claims, so **Count 2** will proceed past preliminary screening review as to all of these defendants.

While Moon states just enough to put forth a claim as to these defendants, **Count 2** must be set aside as to the other individuals named in Moon's complaint.  Moon provides no specifics as to the involvement of Samuels, Baney, Kane, Roal, Walton, or Roloff in his placement in the unit, beyond lumping all of them together as "defendants" and claiming that they kept him in the unit after he became Muslim.  That conclusory allegation is not enough to give these defendants the notice required by Federal Rule of Civil Procedure 8, as it offers little as to how these parties were involved with Moon's placement in the unit at Marion, either at the ground-level at Marion or by way of policy or supervisory action outside of Marion.  *See, e.g., Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (lumping of defendants without "any details about who did what" is "inadequate"); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("formulaic recitations" that all defendants are liable "does not put the defendants on notice of what exactly they might have done").  Moon includes some details about the other defendants' involvement in the religious claim, but his lack of allegations concerning Samuels, Baney, Kane, Roal, Walton, or Roloff means that **Count 2** must be dismissed as to those defendants without prejudice.

As his final claim, Moon says that all of the defendants are liable for intentional infliction of emotional distress under Illinois law (**Count 3**). Where a district court has original jurisdiction over a civil action, as is the case here, it also has supplemental jurisdiction over related state claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the federal claims. *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Moon's emotional distress claim concerns the same facts as his *Bivens* claims, so supplemental jurisdiction over this claim is appropriate.

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must allege facts tending to show that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe distress. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006). An intentional infliction of emotional distress claim has three components: the conduct involved must be extreme and outrageous; the actor must either intend that his conduct inflict severe emotional distress or know that there is a high probability that his conduct will cause severe distress; and the conduct must in fact cause severe distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Liability for this kind of tort is reserved for those acts that are "truly outrageous" – that is, an "unwarranted intrusion" that is "calculated to cause severe emotional distress to a person of ordinary sensibilities." *Id.*

Under these standards, Moon's allegations are not sufficient to make out an emotional distress claim. Moon's allegations for this claim are generalized and conclusory: he makes no effort to distinguish the actions of policy-makers from those of line employees, he does not describe his interactions with the defendants with any real detail, and he has not provided any

allegations in support of his conclusory statement that he suffered distress. Given these defects, his allegations do not offer the minimal "factual content" necessary to state a claim under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and **Count 3** must be dismissed without prejudice.

### Disposition

   **IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED without prejudice**.

   **IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **RIVAS**, **NEUMANN**, **CARDONA**, **BURGESS**, **DODRILL**, **DAVIS**, **NELSON**, **LAIRD**, **SMITH**, **SCHIAVONE**, **BAIR**, **CRUITT**, **FALLS**, **CAPALDO**, **COLT**, **SIMMONS**, **SPROUL**, **JOHNSON**, **JULIAN**, **PARENT**, **HOWARD**, and **GARCIA**. **COUNT 2** is **DISMISSED without prejudice** as to all other defendants.

   **IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**. Because there are no further claims against them, **SAMUELS**, **KANE**, **ROAL**, **BANEY**, **WALTON**, and **ROLOFF** are **DISMISSED without prejudice** from this case.

   **IT IS FURTHER ORDERED** that Plaintiff's Motion for Service of Process at Government Expense (Doc. 5) is **GRANTED**. Service will be ordered as indicated below.

   **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **RIVAS**, **NEUMANN**, **CARDONA**, **BURGESS**, **DODRILL**, **DAVIS**, **NELSON**, **LAIRD**, **SMITH**, **SCHIAVONE**, **BAIR**, **CRUITT**, **FALLS**, **CAPALDO**, **COLT**, **SIMMONS**, **SPROUL**, **JOHNSON**, **JULIAN**, **PARENT**, **HOWARD**, and **GARCIA**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk

within 30 days from the date the forms were sent, the Clerk shall take steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are ordered to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action.

**IT IS SO ORDERED.**

**DATED: September 2, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**